CHRISTINA CHASE BOWERS, a Minor by Connie Bowers, her Mother and Next Friend, *et al.*, Plaintiffs-Appellants, v. DU PAGE COUNTY REGIONAL BOARD OF SCHOOL TRUSTEES DISTRICT NO. 4 *et al.*, Defendants-Appellees.

Second District   No. 2—88—0627

Opinion filed May 11, 1989.—Rehearing denied June 22, 1989.

Andrew D. Werth, of Susan E. Loggans & Associates, of Chicago, for appellants.

James E. Ryan, State's Attorney, of Wheaton (Barbara A. Preiner and Anna B. Harkins, Assistant State's Attorneys, of counsel), for appellee Du Page County Educational Services Region.

Nicholas E. Sakellariou, of Robbins, Schwartz, Nicholas, Lifton & Taylor, Ltd., of Chicago, for appellees Du Page County Regional Board of School Trustees District No. 4 and Addison Board of Education District No. 4.

JUSTICE INGLIS delivered the opinion of the court:

This action was brought by Connie Bowers on behalf of herself and Christina Bowers, a minor, to recover damages from defendants, Du Page County Regional Board of School Trustees District No. 4 (Board of Trustees), Addison Board of Education District No. 4 (Board of Education), and Du Page County Educational Services Region (Educational Services Region), for the alleged negligence and wilful and wanton misconduct of defendants in supervising Christina and in providing equipment. Defendants filed motions to dismiss based on sections 2—615 and 2—619 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, pars. 2—615, 2—619). The trial court granted all of the motions of defendants and dismissed the first amended complaint with prejudice.

On appeal, plaintiffs contend that the trial court abused its discretion in dismissing the complaint pursuant to section 2—619 when defendants' motions and supporting briefs were brought pursuant to section 2—615; the complaint asserted a cause of action for negligence in the supplying of equipment for which defendants can be held liable; the complaint stated a cause of action for wilful and wanton conduct;

and the trial court erred in granting defendants' motions with prejudice. Additionally, the Educational Services Region contends that it is not a legal entity capable of being sued.

The first amended complaint consists of four counts. Count I of the first amended complaint alleges that Christina was injured when she slipped and fell from a rope ladder she was required to climb (by an employee of defendants) during gym class. The complaint also alleges that defendants owned, maintained, and controlled the rope ladder and the gymnasium in which the fall occurred. The amended complaint further alleges:

"6. On November 19, 1986, the defendants, DU PAGE SCHOOL DISTRICT, was negligent in one or more of the following respects:

a. Failed to provide adequate and proper supervision during the physical education class;

b. Failed to provide safe and adequate matting under 'rope ladders';

c. Failed to provide adequate equipment for children to use during the physical education class;

d. Failed to instruct students in the proper manner to perform required activities such as 'rope ladder' climbing;

e. Failed to ascertain whether or not children were able to perform the inherently dangerous task of 'rope ladder' climbing;

f. Failed to insure that other students did not hinder or endanger the plaintiff while she was performing the required task."

Count II of the first amended complaint has been brought by the mother, Connie Bowers, in her own right. Count II incorporates by reference paragraphs 1 through 9 of count I alleging negligence. Count II further alleges that Connie has become liable under section 15 of "An Act to revise the law in relation to husband and wife" (Ill. Rev. Stat. 1985, ch. 40, par. 1015) for expenses incurred as a result of Christina's injuries and that Connie has suffered among other losses the loss of society of Christina.

Count III of the first amended complaint has been brought on behalf of Christina and alleges, in pertinent part:

"6. On and before November 19, 1986, defendants, DU PAGE SCHOOL DISTRICT, knew or should have known that the use of a 'rope ladder' without the proper supervision and equipment would result in the injury to the plaintiff.

7. On November 19, 1986, the defendants, DU PAGE

SCHOOL DISTRICT, with a conscious indifference and utter disregard for the safety of others was willful and wanton in one or more of the following respects:

a. Knowingly and intentionally or with reckless disregard failed to provided [*sic*] inadequate and improper [*sic*] supervision during the physical education class;

b. Knowingly and intentionally or with reckless disregard provided unsafe and inadequate matting under 'rope ladders';

c. Knowingly and intentionally or with reckless disregard provided inadequate equipment for children to use during the physical education class;

d. Knowingly and intentionally or with reckless disregard failed to instruct students in the proper manner to perform required activities such as 'rope ladder' climbing;

e. Knowingly and intentionally or with reckless disregard failed to ascertain whether or not children were able to perform the inherently dangerous task of 'rope ladder' climbing;

f. Knowingly and intentionally or with reckless disregard failed to insure that other students did not hinder or endanger the plaintiff while she was performing the required task;

8. As a proximate result of one or more of the aforesaid willful and wanton acts or omissions of the defendants, DU PAGE SCHOOL DISTRICT, the plaintiff, CHRISTINA CHASE BOWERS, has sustained serious and permanent injuries of a personal and pecuniary nature.''

Count IV of the first amended complaint has been brought by the mother, Connie Bowers, in her own right under the heading of wilful and wanton. However, count IV incorporates by reference "paragraphs 1 thru 10 of *Count I*" which were based in negligence. Like count II, count IV alleges that Connie has become liable under section 15 of "An Act to revise the law in relation to husband and wife" (Ill. Rev. Stat. 1985, ch. 40, par. 1015) for expenses incurred as a result of Christina's injuries and that Connie has suffered, among other losses, the loss of society of Christina.

The Board of Education brought a motion to dismiss the first amended complaint pursuant to section 2—619 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—619), alleging that counts I and II should be dismissed because the Board was immune from liability for negligence under the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (Ill. Rev. Stat. 1985, ch. 85, par. 1—101 *et seq.*) and that counts III and IV

should be dismissed because they were devoid of facts necessary to allege wilful and wanton conduct. The Board of Education also brought a motion to dismiss the first amended complaint pursuant to section 2—615 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—615), alleging, among other things, that count I is insufficient in law because under section 24—24 of the School Code (Ill. Rev. Stat. 1985, ch. 122, par. 24—24), the Board is only liable for improper supervision where its conduct is wilful and wanton. The section 2—615 motion also alleged that counts II and IV should be dismissed because they improperly joined causes of action based on "An Act to revise the law in relation to husband and wife" (Ill. Rev. Stat. 1985, ch. 40, par. 1015) and loss of society, they failed to allege the nature of Christina's injury and how that injury resulted in loss of society to Connie Bowers, and they did not allege that Connie Bowers received demand for payment for medical expenses incurred by Christina as a result of her injury. The Board further alleged in its section 2—615 motion that counts III and IV of the first amended complaint did not allege sufficient facts to state a claim for wilful and wanton misconduct.

The Board of Trustees brought a motion to dismiss the first amended complaint pursuant to section 2—619, alleging:

> "[T]he Regional Board of School Trustees of Du Page County exerts no control over the property of Addison School District No. 4. Furthermore, the Regional Board of School Trustees of Du Page County had no input to and exercised no control or authority over the supervision or instruction of students, selection and provision of equipment, or conditions of the premises as complained of by Plaintiffs."

Attached was an affidavit of Joseph Briski, assistant superintendent for business for the Board of Education of Addison School District No. 4, which supported the motion. The section 2—619 motion further adopted the section 2—619 motion of the Board of Education. The Board of Trustees also brought a motion to dismiss the first amended complaint pursuant to section 2—615, adopting the section 2—615 motion of the Board of Education.

The Educational Services Region brought a motion to dismiss the first amended complaint pursuant to section 2—615, alleging that subsections a, d, e, and f of paragraph 6 of count I should be dismissed because under section 24—24 of the School Code it could not be held liable for negligence. The Educational Services Region further contended that subsections b and c of paragraph 6 of count I should be dismissed because they were conclusory and vague. The Educational Services Region also alleged that count II should be dismissed because

it improperly joined separate causes of action. The Educational Services Region alleged that counts III and IV should be dismissed because they did not state sufficient facts to allege wilful and wanton misconduct.

The trial court dismissed all counts against all defendants, stating:

"1. That the 2—615 motion to dismiss of the Defendant the Du Page County Educational Services Region is hereby granted.

2. That the 2—615 and 2—619 motions to dismiss of the Defendants, the Du Page Regional Board of School Trustees and the Addison Board of Education, District No. 4 are hereby granted.

3. That this matter is dismissed with prejudice."

■ Initially we address the brief filed on behalf of the "Du Page County Educational Service Region" by the State's Attorney for Du Page County, which alleges that the Educational Service Region is not an entity capable of being sued. In response, plaintiffs contend that this issue has been waived because it was not raised in the trial court.

Where a suit is brought against an entity which has no legal existence, the proceedings are void *ab initio*. (*Lewis v. West Side Trust & Savings Bank* (1941), 377 Ill. 384, 385; *Tyler v. J.C. Penney Co.* (1986), 145 Ill. App. 3d 967, 972.) Thus, the legal existence of the entity being sued may be brought into question at any time. (*Lewis*, 377 Ill. at 385; *Tyler*, 145 Ill. App. 3d at 972.) We therefore address the question of whether the "Du Page County Educational Service Region" is a legal entity capable of being sued.

Plaintiffs' first amended complaint names as defendant "DU PAGE COUNTY SERVICES REGION, a local governmental entity." Sections 3A—1 through 3A—15 of the School Code (Ill. Rev. Stat. 1985, ch. 122, pars. 3A—1 through 3A—15) set up a system of educational service regions. The School Code does not, however, provide that educational service regions have any duties nor does it provide that they are corporate entities that have the power to sue and be sued. (Compare Ill. Rev. Stat. 1985, ch. 122, pars. 3A—1 through 3A—15, with Ill. Rev. Stat. 1985, ch. 122, par. 5—2 (board of trustees has the power to sue and be sued).) Rather, the School Code provides for a regional superintendent of schools (see Ill. Rev. Stat. 1985, ch. 122, par. 3A—2), who has certain duties (Ill. Rev. Stat. 1985, ch. 122, par. 3—14). Moreover, section 3A—15 provides that the State's Attorney of the county where the regional superintendent's office is located shall act as the legal representative of the regional superintendent. (Ill. Rev. Stat. 1985, ch. 122, par. 3A—15.) The School Code does not pro-

vide for similar representation of the educational service region. From all of this, we conclude that there is no governmental entity known as the "Du Page County Educational Service Region" which is capable of being sued. While it may be possible to sue the regional superintendent of schools in his or her official capacity, the superintendent has not been sued, and we do not interpret plaintiffs' first amended complaint as naming the superintendent.

■ Plaintiffs contend that defendants improperly attacked the sufficiency of the pleadings through a section 2—619 rather than a section 2—615 motion. We disagree. The Board of Trustees and the Board of Education brought motions to dismiss under both section 2—615 and section 2—619. Further, the motions presented the arguments and law upon which they were based. Plaintiffs therefore were not surprised by the substance of the motions. We therefore conclude that plaintiffs were not prejudiced by the way in which the motions were presented. See *Cali v. DeMattei* (1984), 121 Ill. App. 3d 623, 628.

Before moving on to address plaintiffs' remaining contentions, we note that the section 2—615 and section 2—619 motions raised issues which are not addressed by plaintiffs on appeal. Since the trial court granted the motions without stating its reasoning, we assume that the motions were granted on the basis of all the issues that were raised. Thus, we find that the trial court granted the section 2—619 motion of the Board of Trustees on the basis that it did not control the property or the supplying of equipment. On appeal, plaintiffs do not contend that the Board of Trustees was in control of the property or was otherwise responsible for supplying equipment. Consequently, we affirm the dismissal of all counts as they relate to the Regional Board of School Trustees of Du Page County. We also note that the section 2—615 motion of the Board of Education alleged that counts II and IV of the first amended complaint had improperly joined causes of action and did not adequately state facts to allege an action for loss of society. Thus, we find that the trial court's order also dismissed counts II and IV against the Board of Education on these grounds. Since plaintiffs do not contest these grounds on appeal, we find that the dismissal of counts II and IV should be affirmed. This leaves us to consider counts I and III as they relate to the Board of Education.

The propriety of dismissing count I hinges upon the immunity available to the Board of Education under the School Code and the Tort Immunity Act.

Plaintiffs contend that count I was improperly dismissed as it relates to the negligent providing of equipment. Plaintiffs argue that

under *Gerrity v. Beatty* (1978), 71 Ill. 2d 47, and *Lynch v. Board of Education* (1980), 82 Ill. 2d 415, liability may be imposed against school districts for negligently furnishing equipment which is inadequate, ill-fitting, or defective. In response, the Board of Education contends that the portions of count I which allege negligence in providing equipment are actually acts which relate to supervision and were therefore properly dismissed under section 2—615, because under the School Code the Board cannot be held liable for negligent supervision. The Board also contends that the dismissals were proper under section 2—619 because the Board has immunity under the Tort Immunity Act. We first address the propriety of the dismissal of count I under section 2—615.

■ Under section 24—24 of the School Code, teachers stand in the relation of parents and guardians to pupils. (Ill. Rev. Stat. 1985, ch. 122, par. 24—24; *Kobylanski v. Chicago Board of Education* (1976), 63 Ill. 2d 165, 170.) Teachers are therefore granted immunity from suits for negligence arising out of matters connected to school. (See 63 Ill. 2d at 173.) However, in *Gerrity*, the court found that a school board was subject to liability for negligence arising out of the furnishing of equipment for students. (*Gerrity*, 71 Ill. 2d at 53.) In so doing, the court noted that *Kobylanski* and other cases which held teachers and school districts immune from suits for ordinary negligence were each concerned with a direct teacher-student relationship involving the exercise of a teacher's personal supervision over the conduct or physical movement of a student. (71 Ill. 2d at 51.) The complaint in *Gerrity* alleged that the school district carelessly and negligently:

" '(a) Permitted and allowed the plaintiff to wear an ill fitting and inadequate football helmet;

(b) Refused to furnish adequate and proper football equipment upon the plaintiffs [*sic*] request;

(c) Furnished and provided the plaintiff with an ill fitting and inadequate football helmet when it knew or in the exercise of ordinary care should have known said helmet was liable and likely to cause plaintiff injury.' " (71 Ill. 2d at 50.)

In *Thomas v. Chicago Board of Education* (1979), 77 Ill. 2d 165, 171, the court held that the duty of reasonable care placed upon school districts in the providing of equipment did not extend to individual teachers. The court noted that the school district has the authority to purchase and furnish equipment, which authority was not shared with teachers and coaches. (77 Ill. 2d at 171.) Instead, teachers and coaches have the distinct competence and authority to supervise the

students and their use of the equipment. 77 Ill. 2d at 171.

We agree that, in the instant case, paragraphs 6a, 6d, 6e, and 6f alleged conduct which was supervisory in nature and therefore not sufficient to allege liability for negligence. (See *Kobylanski*, 63 Ill. 2d at 172.) However, we find that paragraphs 6b and 6c sufficiently allege the negligent supplying of equipment by the Board of Education to be proper under *Gerrity*. (See *Gerrity*, 71 Ill. 2d at 50-53.) The Board of Education, however, argues that supplying adequate matting under the rope ladder is a supervisory function of the classroom teacher and not an equipment-furnishing function of the Board. We are of the opinion that full development of the facts might find it to be either. If the teacher in charge of Christina's class set up inadequate mats under the rope ladder, even though adequate mats were made available by the Board, the cause of Christina's injury would be due to the supervisory function of the teacher. (See *Braun v. Board of Education* (1986), 151 Ill. App. 3d 787, 792 (school board's failure to furnish equipment could not be proximate cause where the equipment was furnished and available for use).) As such, negligent conduct would not be sufficient to impose liability. (See *Thomas*, 77 Ill. 2d at 171.) However, if the Board of Education failed to furnish adequate mats to be used with the rope ladder, the cause of plaintiff's injury would be due to the equipment-furnishing function of the Board, and liability could be imposed if such conduct were negligent. Consequently, we find that, under *Gerrity*, the Board of Education cannot claim immunity from count I under the School Code as that count relates to the supplying of equipment.

Having determined that the allegations of negligence regarding the provision of equipment were not subject to immunity under the School Code, we now move on to determine whether these same allegations are subject to immunity under the Tort Immunity Act.

The Board of Education contends that, for purposes of its section 2—619 motion, the duty to provide equipment is not at issue. The Board contends that the issue is the application of the Tort Immunity Act (Ill. Rev. Stat. 1985, ch. 85, par. 1—101 *et seq.*). The Board of Education argues that the amount and type of equipment to be used is a determination of policy and an exercise of discretion for which no liability can attach under section 2—201 of the Tort Immunity Act (Ill. Rev. Stat. 1985, ch. 85, par. 2—201). The Board's contention is based on the premise that it can only act through its employees and that under section 2—109 (Ill. Rev. Stat. 1985, ch. 85, par. 2—109) it cannot be held liable unless there is liability on the part of the Board members or the Board's employees.

*Gerrity* did not address whether a school board could claim immunity under the Tort Immunity Act for liability arising out of the negligent provision of equipment and thus is not determinative of the issue now before us. However, the decision reached in *Gerrity* may be considered controlling if it is determined that the School Code and the Tort Immunity Act are to be read *in pari materia.*

In *Kobylanski,* the court noted that immunity under the School Code did not derive from immunity in the Tort Immunity Act (*Kobylanski,* 63 Ill. 2d at 174), thus indicating that the two statutes are to be interpreted apart from one another. That the two statutes should be interpreted independently of one another was also recognized in *Keller v. Board of Education* (1978), 68 Ill. App. 3d 7. In *Keller,* the court noted that *Gerrity* did not consider the Tort Immunity Act and further found that the negligence alleged fell within the scope of sections 3—106 and 3—108 of the Tort Immunity Act (Ill. Rev. Stat. 1977, ch. 85, pars. 3—106, 3—108). (*Keller,* 68 Ill. App. 3d at 9.) Similarly, the court in *Jackson v. Board of Education* (1982), 109 Ill. App. 3d 716, 718, recognized that *Gerrity* had not addressed the Tort Immunity Act and found that the defendant school board could claim immunity under section 3—106 of the Tort Immunity Act (Ill. Rev. Stat. 1979, ch. 85, par. 3—106). In accordance with the above authorities, it is our opinion that the School Code and the Tort Immunity Act are to be interpreted independently of one another. Yet, while we interpret the statutes independently of one another, we are cognizant of the fact that the policy considerations stated in *Gerrity* are as applicable to the Tort Immunity Act as they were to the School Code. In considering public policy in *Gerrity,* the court stated:

> "[P]ublic policy considerations argue rather strongly against any interpretation which would relax a school district's obligation to insure that equipment provided for students in connection with activities of this type is fit for the purpose." (*Gerrity,* 71 Ill. 2d at 52.)

The court further noted that to hold school districts to the duty of ordinary care would not be unreasonably burdensome nor would it be inconsistent with the intended purposes of the School Code. (71 Ill. 2d at 52.) It is also evident that to hold that immunity is available under the Tort Immunity Act would effectively immunize school boards from the liability found under *Gerrity.* (Note, section 9—103 of the Tort Immunity Act has been amended to allow insurers to assert any immunities to which the insured public entity is entitled. (Ill. Rev. Stat. 1987, ch. 85, par. 9—103(c).) With these considerations in mind, we move on to consider section 2—109 of the Tort Immunity Act.

Section 2—109 of the Tort Immunity Act provides:

"A local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable." Ill. Rev. Stat. 1985, ch. 85, par. 2—109.

■ The Board of Education's contention that it can only operate through its employees and thus can be held liable only if one of its employees can be held liable finds support in *Melbourne Corp. v. City of Chicago* (1979), 76 Ill. App. 3d 595. In *Melbourne*, the plaintiff argued that section 2—109 of the Tort Immunity Act relates only to cases of vicarious liability on the part of the defendant city for acts of its employees based on the doctrine of *respondeat superior*. (76 Ill. App. at 604.) The plaintiff further contended that liability of the city was direct and primary. (76 Ill. App. 3d at 604.) The court disagreed. The court held that the city was a municipal corporation that could only function through the actions of its agents and officials. (76 Ill. App. 3d at 604; see also *Classroom Teacher's Association v. Board of Education* (1973), 15 Ill. App. 3d 224, 229 (as a corporate body the board necessarily acts through its agents); Baum, *Tort Liability of Local Governments & Their Employees: An Introduction to the Illinois Immunity Act*, 1966 U. Ill. L.F. 981, 988 (through section 2—109, "the liability of local governments is made to depend upon and is limited by the liability of its employees").) The court further stated that the plaintiff "may not evade the effects of the Act by suing the city itself, but not the Board officials whose actions or omissions constitute the alleged cause of action." (*Melbourne Corp.*, 76 Ill. App. 3d at 604.) The court went on to hold that through section 2—109 the city was derivatively protected under section 2—201 because the alleged wrongful act was discretionary. 76 Ill. App. 3d at 604.

We follow *Melbourne Corp.* and conclude that in this case the Board of Education may assert immunity under sections 2—109 and 2—201 of the Tort Immunity Act even though no specific employee of the Board has been named as causing the alleged wrongful act. We therefore proceed to consider whether the furnishing of equipment is a discretionary action under section 2—201 of the Tort Immunity Act.

■ Section 2—201 of the Tort Immunity Act provides:

"Except as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused." Ill. Rev. Stat. 1985, ch. 85, par. 2—201.

■ We initially note that in *Thomas v. Chicago Board of Educa-*

*tion* (1978), 60 Ill. App. 3d 729, 734, *rev'd on other grounds* (1979), 77 Ill. 2d 165, it was held that the furnishing of equipment was separate and apart from the exercise of discretionary authority. Thus, the court stated:

> "Just as the School Code does not require that teachers and school districts be immunized from liability for negligence in this respect, neither does the Tort Immunity Act mandate that we absolve defendants, as a matter of law, from liability for the negligent furnishing of defective or obsolete equipment." 60 Ill. App. 3d at 734.

We disagree with the result reached in *Thomas*. Discretionary acts are those which are "unique to the particular public office and not merely ministerial in nature." (*People v. Patrick J. Gorman Consultants, Inc.* (1982), 111 Ill. App. 3d 729, 731.) Ministerial acts, on the other hand, are those which are performed on a given state of facts in a prescribed manner, in obedience to the mandate of legal authority. *Larson v. Darnell* (1983), 113 Ill. App. 3d 975, 977.

Section 10—20.8 of the School Code provides that the Board of Education has the duty to direct what branches of study shall be taught and what textbooks and what apparatus shall be used. (Ill. Rev. Stat. 1985, ch. 122, par. 10—20.8.) While the School Code provides that it is the duty of the Board to direct what apparatus is to be used, it does not direct that the Board is to use or supply particular equipment. We are therefore of the opinion that the provision of equipment is a discretionary act under section 2—201 of the Tort Immunity Act. In accordance with the foregoing analysis, we find that immunity is available to the Board of Education under the Tort Immunity Act. Consequently, we find that count I was properly dismissed under the section 2—619 motion of the Board of Education of Addison School District No. 4.

Plaintiff also contends that count III was improperly dismissed because it alleged wilful and wanton conduct. In response, the Board of Education contends that count III was properly dismissed because it did not allege facts which demonstrate wilful and wanton conduct.

■ In order to be wilful and wanton, an act must be done intentionally or committed under circumstances exhibiting a reckless disregard for the safety of others. (*O'Brien v. Township High School District 214* (1980), 83 Ill. 2d 462, 469.) In *Tijerina v. Evans* (1986), 150 Ill. App. 3d 288, 291, this court set out the requirements for pleading wilful and wanton misconduct:

> "To sufficiently plead wilful and wanton misconduct, a plaintiff must allege facts demonstrating the existence of a duty

owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately resulting from the breach. [Citation.] Fact pleading, as opposed to notice pleading, is required in Illinois; accordingly, a plaintiff must allege facts that are sufficient to bring his claim within the scope of the legally recognized cause of action. [Citation.] Only well-pleaded facts are admitted by a motion to dismiss, and the requirement that a complaint set forth facts necessary for recovery under the theory asserted is not satisfied, in the absence of the necessary allegations, by the general policy favoring the liberal construction of pleadings."

The court went on to note that a court must focus on the individual facts alleged in each case to determine whether they are sufficient to support a cause of action based on wilful and wanton misconduct. 150 Ill. App. 3d at 292.

The same actions may be done negligently or with wilful and wanton disregard. Thus, allegations for wilful and wanton misconduct will not fail simply because they mirror allegations for negligence and merely change the state of mind. See *O'Brien*, 83 Ill. 2d at 468-69.

■ In the instant case, it was alleged that the Board of Education maintained a rope ladder which was 20 to 25 feet high; Christina was required to climb the rope ladder for gym class by an employee of the Board; and the Board knowingly and intentionally or with reckless disregard provided inadequate supervision, provided unsafe and inadequate matting under the rope ladder, provided inadequate equipment, failed to instruct students in the proper manner to perform required tasks such as rope-ladder climbing, failed to ascertain whether Christina was able to perform the task of rope-ladder climbing, and failed to ensure other students did not hinder or endanger Christina while she was climbing the rope ladder. Thus, the first amended complaint alleged that the actions which caused Christina's injuries were done intentionally or with reckless disregard. We find such allegations to be sufficient to state a claim for wilful and wanton misconduct. Accordingly, we find that count III should not have been dismissed against the Addison Board of Education District No. 4.

■ We next address plaintiffs' contention that the trial court abused its discretion in dismissing the first amended complaint with prejudice. Having determined that count III was improperly dismissed against the Board of Education and that the "Du Page County Educational Service Region" is not a proper legal entity to be sued, we find that we need only determine whether dismissing all counts against the Board of Trustees with prejudice was an abuse of discretion.

Leave to amend should be granted unless it is apparent that even after amendment no cause of action can be stated. (*Davies v. Martel Laboratory Services, Inc.* (1987), 157 Ill. App. 3d 686, 688.) However, the decision of the trial court will only be reversed if there has been an abuse of discretion. *Plocar v. Dunkin' Donuts of America* (1981), 103 Ill. App. 3d 740, 749.

Since one of the reasons that the trial court granted the dismissal was that the Board of Trustees had no control over the property and was not involved with the supplying of equipment, we find that dismissal with prejudice as to the Board of Trustees was not an abuse of discretion, as no amount of amending could change this fact.

In accordance with the foregoing analysis, we affirm the dismissal of counts I through IV of the first amended complaint against the "Du Page County Educational Service Region." We also affirm the dismissal of counts I through IV against the Du Page County Regional Board of School Trustees District No. 4. Finally, we affirm the dismissal of counts I, II, and IV against the Addison Board of Education District No. 4 but reverse the dismissal of count III against the Addison Board of Education District No. 4.

Affirmed in part, reversed in part, and remanded.

NASH and REINHARD, JJ., concur.