ROSELYN M. GILMORE, a Minor, by and through her Father, Rodney Gilmore, Plaintiff, v. THE CITY OF ZION *et al.*, Defendants-Appellants and Third-Party Plaintiffs (Zion School District No. 6, Third-Party Defendant-Appellee).

Second District   No. 2—92—0078

Opinion filed December 9, 1992.

Lynn D. Dowd and Marc F. Benjoya, both of Cassiday, Schade & Gloor, of Chicago (Timothy J. Ashe, of counsel), and Berle L. Schwartz, of Highland Park, for appellants.

Wayne F. Plaza and David J. Bressler, both of Rooks, Pitts & Poust, of Wheaton (Timothy M. McLean, of counsel), for appellee.

JUSTICE UNVERZAGT delivered the opinion of the court:

Plaintiff, Roselyn Gilmore, filed a complaint against the defendants, the City of Zion and Jimmie Jester (the City). Plaintiff alleged that a motor vehicle driven by Jester, an agent of the City of Zion, struck her as she crossed an intersection of two public highways adjacent to her elementary school. Plaintiff was seven years old on the date of the accident.

The City filed a third-party action for contribution against Zion School District No. 6, alleging the school district was negligent for failing to have a crossing guard present at the time plaintiff was injured. The school district moved to dismiss, alleging, *inter alia*, that it owed no duty to post a crossing guard at the intersection at issue. The trial court subsequently dismissed the third-party complaint pursuant to section 3—108 of the Local Governmental and Governmental Employees Tort Immunity Act. Ill. Rev. Stat. 1989, ch. 85, par. 3—108.

The City filed an amended third-party complaint for contribution, alleging a cause of action against the school district for wilful and

wanton misconduct. Pursuant to another motion to dismiss filed by the school district, the trial court entered an order dismissing the amended third-party complaint for failure to state a cause of action.

The City then filed a second amended third-party complaint for contribution, again alleging a cause of action against the school district for wilful and wanton misconduct. The City premised the allegations in its second amended complaint upon the contention that the school district owed a duty to monitor the intersection in question at the time of plaintiff's injuries. Specifically, the City alleged that the school district owned, operated, managed, maintained and controlled the school; that the school district knew that the volume and nature of traffic along 27th Street at the time plaintiff was injured rendered the intersection highly dangerous for six-year-old children to cross without assistance; and that it was reasonably foreseeable that a small child, such as plaintiff, ran a significant risk of being injured without the assistance of a crossing guard at the intersection at issue. Accordingly, the City asserted, the school district undertook a duty to provide a crossing guard at the intersection at the time plaintiff was injured.

The City further alleged that, with "conscious disregard" and "utter indifference" for the safety of plaintiff, the school district, *inter alia*, failed to perform its duty of having a crossing guard present at the time of the accident and instructed the crossing guard to leave the intersection notwithstanding that the school district knew or should have known that students would need assistance "even after the school day officially began." According to the City, as a direct and proximate result of the school district's wilful and wanton misconduct, plaintiff was injured. Based on these allegations, the City contended that it could pursue its rights of contribution against the school district.

The school district moved to dismiss the third-party action pursuant to section 2—615 of the Code of Civil Procedure (the Code) (Ill. Rev. Stat. 1989, ch. 110, par. 2—615), claiming that the City failed to state a cause of action. The school district contended that it owed no legal duty to place a crossing guard at the intersection in question at any time and, thus, could not be liable for contribution to the plaintiff. Alternatively, the school district moved to dismiss pursuant to section 2—619(a)(9) of the Code (Ill. Rev. Stat. 1989, ch. 110, par. 2—619(a)(9)), contending that the City's claim was "barred by other affirmative matter avoiding the legal effect of or defeating the claim." The school district argued that the voluntary provision of a crossing guard at an intersection prior to the start of school did not impose a

duty upon it to maintain a crossing guard at that intersection after school began. In support of this argument the school district attached the affidavit of plaintiff's school principal, Roger Lemnus.

In his affidavit, Lemnus set forth that he was responsible for the assignment and supervision of the crossing guards at the intersection in question. Lemnus further stated that on the date in question and at all other relevant times the school day at plaintiff's school began promptly at 8:30 a.m. each morning. A school bell rang at 8:25 a.m. each morning indicating that any children on the playground or elsewhere outside the school premises should enter the building at that time. The school crossing guards were instructed to remain at their posts for an additional five minutes following this first school bell until a second bell rang at 8:30 a.m. each morning, indicating the official start of the school day. Based upon his investigation and the police report concerning the accident, plaintiff's accident occurred after the school day began at 8:30 a.m. on the date in question.

In response to the school district's motion to dismiss the second amended complaint and the allegations concerning the facts surrounding the accident, the City filed with the court the police report relating to the accident. The police report did not contradict any of the allegations in Lemnus' affidavit. The police report reflected that the accident occurred at 8:35 a.m. and that the police were notified of the accident at 8:36 a.m.

Prior to the court's ruling on the motion to dismiss, the City filed a motion to compel the school district's compliance with the City's discovery request, asserting therein that the school district had refused to answer written discovery concerning the allegations in the third-party complaint. The court continued the City's motion to compel pending its ruling on the school district's motion to dismiss the third-party action.

After the parties had fully briefed and presented their oral arguments for the third time on a motion to dismiss filed by the school district, the trial court entered an order granting the motion and dismissing the second amended complaint with prejudice. The trial court further found that there was no just reason to delay enforcement or appeal of this final order. The City filed a timely notice of appeal from the trial court's ruling.

On appeal, the City contends that the trial court erred in dismissing its second amended complaint, as it asserted a cognizable cause of action for contribution. In support of its position, the City argues (1) that the school district owed a duty to provide a crossing guard at the intersection in question at the time of the accident and (2) that the

voluntary provision of a crossing guard at the intersection created a duty to maintain a crossing guard at that intersection. Additionally, the City maintains that the school district's section 2—619 motion to dismiss (Ill. Rev. Stat. 1989, ch. 110, par. 2—619) was in reality a motion for summary judgment and, consequently, the court's dismissal pursuant to section 2—619 was erroneous. Also, the City asserts that the trial court erred in refusing to permit written discovery on the contribution issues before dismissing the action.

The City first contends that the trial court erred in dismissing its second amended complaint, as the complaint asserted a cognizable cause of action for contribution against the school district. It is the City's contention that its complaint set forth ample facts to support its theory that the school district's acts or omissions, in failing to provide a crossing guard at the intersection at issue at the time the plaintiff was injured, were wilful and wanton. Thus, the City asserts, the court's dismissal of its third-party complaint, pursuant to section 2—615 of the Code (Ill. Rev. Stat. 1989, ch. 110, par. 2—615), for failure to state a cause of action was erroneous.

The City concedes that no recovery in contribution exists unless the school district has breached a duty owed to plaintiff. But, the City argues, the school district owed a duty to plaintiff to provide a crossing guard at the time of the accident. Conversely, the school district maintains that under Illinois law it owed no duty to plaintiff to provide a crossing guard at the intersection. We are in agreement with the school district.

■ Under the School Code, school boards are granted the power to employ school crossing guards "for the purpose of directing traffic upon school grounds and on or along streets and highways or portions thereof within a radius of one mile from such school grounds." (Ill. Rev. Stat. 1989, ch. 122, par. 10—22.28a.) Although this statutory provision grants school boards the power to use crossing guards, the statute does not impose any duty upon the school boards to exercise this power. A school board has wide discretion in the exercise of its powers (*Tyska v. Board of Education of Township High School District 214* (1983), 117 Ill. App. 3d 917, 923), and whether it exercises its power to employ a crossing guard at an intersection is solely within that discretion.

Although no statutory law imposed a duty upon the school district to provide a crossing guard at the intersection in question, the City also claims that such a duty has been imposed by common law. Relying on *Lance v. Senior* (1967), 36 Ill. 2d 516, the City contends that the allegations set forth in its second amended complaint satisfy the

common-law duty analysis set forth by our supreme court in *Lance*. We cannot locate in *Lance* the material quoted and relied upon by the City in its brief. Moreover, we fail to see how *Lance* supports the City's argument that as a matter of social policy a common-law duty to provide a crossing guard at the intersection in question should be imposed upon the school district.

■ As the school district correctly points out, social policy arguments for the imposition of a duty upon school districts are under the province of the Illinois legislature. In matters relating to the conduct of schools, the legislature and reviewing courts, pursuant to the Local Governmental and Governmental Employees Tort Immunity Act (the Tort Immunity Act) (Ill. Rev. Stat. 1989, ch. 85, par. 3—108), have limited a school district's liability to circumstances under which the school district is guilty of wilful and wanton conduct. The City contends, however, that the facts alleged in its second amended complaint presented "a classic scenario" of wilful and wanton conduct and, therefore, warranted a reversal of the trial court's dismissal order. We do not agree.

■ To be wilful and wanton, an act must be done intentionally or committed under circumstances exhibiting a reckless disregard for the safety of others. (*Bowers v. Du Page County Regional Board of School Trustees District No. 4* (1989), 183 Ill. App. 3d 367, 379.) This court has previously set out the requirements for pleading wilful and wanton misconduct:

> "To sufficiently plead wilful and wanton misconduct, a plaintiff must allege facts demonstrating the existence of a duty owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately resulting from the breach. [Citation.] Fact pleading, as opposed to notice pleading, is required in Illinois; accordingly, a plaintiff must allege facts that are sufficient to bring his claim within the scope of the legally recognized cause of action. [Citation.] Only well-pleaded facts are admitted by a motion to dismiss, and the requirement that a complaint set forth facts necessary for recovery under the theory asserted is not satisfied, in the absence of the necessary allegations, by the general policy favoring the liberal construction of pleadings." (*Tijerina v. Evans* (1986), 150 Ill. App. 3d 288, 291.)

A court must focus on the individual facts alleged in each case to determine whether they are sufficient to support a cause of action based on wilful and wanton misconduct. 150 Ill. App. 3d at 292.

In its second amended complaint, the City alleged that the school district caused and/or contributed to plaintiff's injuries as a result of one or more of the following "willful and wanton acts and omissions":

"(a) failed to have a crossing guard present at the time of the accident in question when it knew or should have known that students would be in need of a crossing guard to permit them to safely cross the street;

(b) instructed the crossing guards to leave their post notwithstanding that the defendant knew or should have known that students would be in need of a crossing guard even after the school day officially began;

(c) failed to have a crossing guard present at the scene of the occurrence to control and direct traffic and students when said defendant knew that the students required the assistance of a crossing guard to safely cross the street and gain access to the school, but consciously disregarded the need of the student and authorized, allowed or permitted the crossing guards to leave their post;

(d) failed to instruct parents, siblings or other individuals responsible for the safety of pupils of the age and experience of the plaintiff of the proper procedures for safely transporting such pupils to school property following the start of the official school day;

(e) failed to require parents, siblings or other individuals responsible for the safety of pupils of the age and experience of the plaintiff to have such pupils accompanied to school by a person of sufficient age and experience when it was likely that such pupil would arrive after the start of the official school day; and

(f) otherwise consciously disregarded the need to develop plans and procedures for providing for the safe crossing of 27th Street by pupils of the age and experience of the plaintiff at the time and place of plaintiff's accident."

■ The City's complaint does not allege that the school district intentionally caused plaintiff's injuries, nor does it, under the facts alleged, sufficiently establish the school district's reckless disregard for plaintiff's safety. While the complaint does allege that the school district "consciously disregarded" plaintiff's safety in crossing the streets in question, the allegations, as stated, do not rise to the level of wilful and wanton misconduct. The City's allegations that the school district instructed its crossing guards to leave the intersection in question after the school day officially began, despite knowing that

some students might still need assistance, did not demonstrate that the school district had actually intended to injure plaintiff or had exhibited utter indifference or a reckless disregard for plaintiff's safety. Nor were any of the other foregoing allegations sufficient to state a cause of action for wilful and wanton misconduct. Arguably, the allegations may have set forth a cause of action based on negligence; however, they did not allege sufficient facts upon which wilful and wanton misconduct could be based as was necessary here to avoid section 3—108(a) of the Tort Immunity Act (Ill. Rev. Stat. 1989, ch. 85, par. 3—108(a)). Accordingly, the trial court's dismissal of the City's second amended complaint, pursuant to section 2—615 of the Code, for failure to state a cause of action was proper.

The City also alleged in its second amended complaint that liability should be imposed upon the school district because by voluntarily placing a crossing guard at the intersection in question, the school district assumed a duty to have a guard present at the time of the accident. As the school district points out, however, although liability can arise from the negligent performance of a voluntary undertaking, the scope of any duty is limited to the extent of the undertaking (*Goebig v. City of Chicago* (1989), 188 Ill. App. 3d 614, 618), *e.g.*, in the instant case, to the period preceding the official start of the school day.

To support its position that the school district voluntarily assumed a duty of placing a crossing guard at the intersection at issue, the City relies on a Louisiana Appellate Court case, *Barnes v. Bott* (La. App. 1991), 571 So. 2d 183. Decisions from other jurisdictions are not binding upon Illinois courts. (*Skipper Marine Electronics, Inc. v. United Parcel Service, Inc.* (1991), 210 Ill. App. 3d 231, 239; *People v. Lawrence* (1991), 208 Ill. App. 3d 292, 295.) Moreover, we agree with the school district that the *Barnes* case is not applicable here. First of all, as the City acknowledges in its brief, Louisiana law differs from Illinois law. In determining whether the school board in *Barnes* was liable for a first-grader who was struck and killed as he attempted to cross an intersection where a crossing guard was normally located, the plaintiff, unlike the plaintiff here, had to prove that the school board's conduct was a cause in fact of the plaintiff's harm. Also, contrary to the instant case, the defendant in *Barnes* had knowledge of a prior accident involving another child who had crossed at the intersection in question. Further, unlike the situation presented here, the accident in question occurred during the normal duty hours of the crossing guard. Because of this we find the *Barnes* case unpersuasive.

In its motion to dismiss the school district sought, alternatively, to dismiss the City's second amended complaint based on section 2—

619(a)(9) of the Code (Ill. Rev. Stat. 1989, ch. 110, par. 2—619(a)(9)). In support of this alternative pleading, the school district submitted the affidavit of Roger Lemnus, plaintiff's school principal. In his affidavit Lemnus set forth affirmative matters to defeat the City's claim against the school district. Lemnus stated that at 8:25 a.m. each morning a school bell rang warning students outside the school premises to enter the building. At 8:30 a.m. a second school bell rang indicating that the school day had officially started. School crossing guards were instructed to remain on duty at their respective locations until the second school bell rang at 8:30 a.m. Lemnus further stated that, based upon his investigation and upon the police report he had received concerning plaintiff's accident, the accident had occurred after 8:30 a.m.

■ In response to Lemnus' affidavit, the City submitted the police report, which actually corroborated Lemnus' understanding that the accident occurred after the start of school. The report indicated that the accident occurred at 8:35 a.m., 5 minutes after the start of school and 10 minutes after all students were to be in the building. Given the fact that the City, itself, through its submission of the police report confirmed that plaintiff's accident occurred after the beginning of the school day, this issue of fact is not disputable, as the City claims. Thus, the City's assertions that the school district's motion to dismiss should not have been allowed on the basis of section 2—619(a)(9) is without merit. Lemnus' affidavit included affirmative matters in the nature of a defense which negated the City's cause of action. (See *Brown v. Chicago Park District* (1991), 218 Ill. App. 3d 612, 616.) We conclude that a dismissal based on section 2—619(a)(9) was proper. Given this finding, we need not address the City's contention that the school district's section 2—619 motion was seeking summary judgment.

Last, the City asserts that the trial court's continuance of the City's motion to compel discovery pending the court's ruling on the school district's motion to dismiss barred the City from utilizing discovery to allege an action for contribution against the school district. In its motion to compel the City specifically complained of the school district's failure to comply with the City's written discovery in the form of written interrogatories.

While we note that the record contains proof of service of such interrogatories, a copy of the interrogatories is not present in the record. The content of the interrogatories is necessary to a determination of whether the answers to such interrogatories would have aided the City in the development of facts in support of its alleged theory of

liability. Without a copy of the interrogatories, we cannot determine whether the trial court erred in continuing the City's motion to compel. Moreover, without a transcript of the hearing which, according to the record, was held on the City's motion to compel we have no basis for reviewing the court's determination that the motion be continued.

Any doubt arising from the incompleteness of the record must be resolved against the appellant, whose burden it is to provide a sufficient record to support a claim of error. (*Frisch Contracting Service Co. v. Personnel Protection, Inc.* (1987), 158 Ill. App. 3d 218, 221.) In the absence of a contrary indication in the record, this court will presume that the lower court acted properly. (158 Ill. App. 3d at 221.) A trial court is afforded great latitude in ruling on discovery matters, and this court will not disturb such a ruling on appeal absent a manifest abuse of discretion. (*Maxwell v. Hobart Corp.* (1991), 216 Ill. App. 3d 108, 110.) With no copy of the interrogatories and no transcript of the hearing conducted on the City's motion to compel before us, we must presume that the trial court did not abuse its discretion in ruling that the City's motion to compel should be continued pending the court's ruling on the school district's motion to dismiss.

For the reasons stated above, we find that the school district owed no duty to plaintiff to provide a crossing guard at the intersection in question. Even if, however, such a duty existed, the factual allegations of the City's second amended complaint were insufficient to state a cause of action for wilful and wanton misconduct, as the City alleged here. At best, the complaint alleged mere negligence against the school district, and section 3—108(a) of the Tort Immunity Act (Ill. Rev. Stat. 1989, ch. 85, par. 3—108(a)) immunizes the school district for the negligent conduct of "noncertificated employees" (see *Jastram v. Lake Villa School District 41* (1989), 192 Ill. App. 3d 599, 604), such as crossing guards.

Since the trial court granted the school district's motion to dismiss without stating its reasons but prefacing its order with the fact that the motion was brought "pursuant to Section 2—615, or in the alternative, Section 2—619," we assume that the court granted the school district's motion based on all of the issues raised in the motion. From our review of the record, we conclude that the court's dismissal was proper under either section 2—615 or 2—619.

The judgment of the circuit court of Lake County is affirmed.

Affirmed.

WOODWARD and McLAREN, JJ., concur.