775 N.E.2d 1022 (2002)
333 Ill. App.3d 86
266 Ill.Dec. 950
Darrell COURSON, a Minor, by Paula COURSON, His Mother and Next Friend, Plaintiffs-Appellants,
v.
DANVILLE SCHOOL DISTRICT NO. 118, Defendant-Appellee.
No. 4-00-0192.
Appellate Court of Illinois, Fourth District.
August 14, 2002.
*1023 Frederick H. Underhill (argued), Groppi, McNamara & Underhill, Danville, for Darrell Courson, Minor.
John F. Martin (argued), Meachum & Martin, Danville, for Danville School District No. 118.
Justice COOK delivered the opinion of the court:
In 1994, plaintiff, Darrell Courson, an eighth-grade student, was injured while using a table saw during shop class. The case was previously before us on the trial court's grant of summary judgment to defendant, Danville School District No. 118 (District). Courson v. Danville School District No. 118, 301 Ill.App.3d 752, 235 Ill.Dec. 98, 704 N.E.2d 447 (1998). The trial court had held that the actions of the District and its employees in failing to provide a safety shield on the saw were discretionary actions which came within the immunity afforded by the Local Governmental and Governmental Employees Tort Immunity Act (Act) (745 ILCS 10/2-201 (West 2000)). We reversed the summary judgment, noting that the deposition of the shop teacher had not been taken, and that not every action taken by a public employee is immunized by the Act. Courson, 301 Ill.App.3d at 757-58, 235 Ill.Dec. 98, 704 N.E.2d at 451.
The parties have now deposed the shop teacher, Paul Liddle. Liddle testified that the saw's safety shield was not functioning properly; it would catch on wood being pushed through the saw. He therefore deemed the saw more safe to operate without the shield. Thus, he permanently removed the shield sometime before plaintiff was injured. Liddle also testified that he was given authority by the District to operate the wood shop in the manner he saw fit. He did not contact any school official or the manufacturer of the saw before or after removing the safety shield. Based on Liddle's deposition, the trial court again entered summary judgment in favor of the District. Plaintiff appeals. We review an order granting summary judgment de novo. Warren v. Burris, 325 Ill.App.3d 599, 603, 259 Ill.Dec. 481, 758 N.E.2d 889, 892 (2001).
The conflicting provisions and meaningless intricacies of the Act have presented problems for the courts. The application of section 2-201 has been particularly difficult. Section 2-201 provides as follows:
"Except as otherwise provided by [s]tatute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused." 745 ILCS 10/2-201 (West 2000).
Applying this language, the supreme court has stated that the employee's position may involve either (1) determining policy or (2) exercising discretion, but the employee's act or omission must be both a(3) determination of policy and an (4) exercise of discretion. Arteman v. Clinton Community Unit School District No. 15, 198 Ill.2d 475, 484, 261 Ill.Dec. 507, 763 N.E.2d *1024 756, 763 (2002). The key question under section 2-201 is accordingly not so much the position of the employee but the determination made by the employee, whether that determination was a "discretionary policy determination." Arteman, 198 Ill.2d at 487, 261 Ill.Dec. 507, 763 N.E.2d at 764.
In our previous decision, we focused on the determination made by the employee and concluded there were three possibilities in these cases:
(1) The act or omission could constitute a discretionary action, where the public employee taking the action would be immune from liability, under section 2-201, and the local public entity would then be immune under section 2-109 if the only basis for its liability was vicarious liability. Courson, 301 Ill.App.3d at 756, 235 Ill.Dec. 98, 704 N.E.2d at 450.
(2) The act or omission could be ministerial, in which event the local public entity may be liable, but the public employee will not be liable under section 2-202, absent willful and wanton conduct. Courson, 301 Ill.App.3d at 756, 235 Ill.Dec. 98, 704 N.E.2d at 450.
(3) The act or omission might be neither an exercise of discretion nor a ministerial act, but simply an oversight, in which event there would not be immunity under section 2-201. Courson, 301 Ill.App.3d at 757, 235 Ill.Dec. 98, 704 N.E.2d at 451; see also Catberro v. Naperville School District No. 203, 317 Ill.App.3d 150, 154, 250 Ill. Dec. 654, 739 N.E.2d 115, 119 (2000) (purchase of poles used in physical education class may have involved a mere failure to inspect, not an exercise of discretion).
One of the rationales for sovereign immunity is that allowing a suit could operate to control the actions and policies, the discretion, of the sovereign. Currie v. Lao, 148 Ill.2d 151, 159-60, 170 Ill.Dec. 297, 592 N.E.2d 977, 980 (1992). In our previous decision, we noted that although many activities may be said to involve discretion, some cases have narrowed the definition. The operation of a snowplow is neither a ministerial nor a discretionary action. Snyder v. Curran Township, 167 Ill.2d 466, 473, 212 Ill.Dec. 643, 657 N.E.2d 988, 992 (1995) (overruling Mower v. Williams, 402 Ill. 486, 84 N.E.2d 435 (1949)). "'[D]iscretionary acts are those which are unique to a particular public office.'" Arteman, 198 Ill.2d at 484-85, 261 Ill.Dec. 507, 763 N.E.2d at 763, quoting Snyder, 167 Ill.2d at 474, 212 Ill.Dec. 643, 657 N.E.2d at 993. It would be difficult to conceive of any official act that did not admit of some "discretion" in the manner of its performance, even if it involved only the driving of a nail. Snyder, 167 Ill.2d at 474, 212 Ill.Dec. 643, 657 N.E.2d at 993.
Along those lines, the rule has evolved that claims based on the negligent operation of an automobile by a state employee are generally outside the doctrine of sovereign immunity. Currie, 148 Ill.2d at 160, 170 Ill.Dec. 297, 592 N.E.2d at 980.
"Lao's decisions, as he proceeded to the alleged call, regarding when to execute turns were not `discretionary' acts, as that term is used in the analysis of this issue. While Lao did in fact make decisions regarding what route to follow, the choices he made were not an exercise of his official discretion. To the contrary, Lao's deciding when and where to turn was an activity of a non-official nature. These same choices are made by all drivers of motor vehicles. This was not an activity that is uniquely related to Lao's official duties as a State trooper." (Emphasis in original.) Currie, 148 Ill.2d at 167, 170 Ill.Dec. 297, 592 N.E.2d at 984.
"This rule is, of course, not without exceptions: in some circumstances, a State employee's manner of operating a *1025 vehicle may be so unique to his employment that a lawsuit aimed at his negligent driving could operate to control the actions and policies of the State. See, e.g., Campbell v. White (1991), 207 Ill. App.3d 541[, 552, 152 Ill.Dec. 519, 566 N.E.2d 47, 54] (sovereign immunity applies where a State law enforcement officer is engaged in a high-speed chase of a suspect and he negligently causes the death of the suspect)." Currie, 148 Ill.2d at 160, 170 Ill.Dec. 297, 592 N.E.2d at 981.
Currie involved a state employee and not a local government employee to whom section 2-201 might apply. Currie considered whether an action against a state trooper based on an automobile collision was really a claim against the State which had to be brought in the Court of Claims, and whether the trooper was immune under the common-law doctrine of public officials' immunity. Currie, 148 Ill.2d at 166, 170 Ill.Dec. 297, 592 N.E.2d at 983. Nevertheless, in construing section 2-201, the cases have employed common-law definitions of discretionary and ministerial functions. Snyder, 167 Ill.2d at 473, 212 Ill. Dec. 643, 657 N.E.2d at 992.
Are some actions of a school district employee so standard, so routine, or so independent of the office that they do not amount to a discretionary policy determination? Is, for example, the operation of a school bus by an employee of a local school district outside the immunity afforded by section 2-201? The Act's shortened statute of limitations has been applied to school bus drivers. Racich v. Anderson, 241 Ill.App.3d 336, 339-40, 181 Ill.Dec. 721, 608 N.E.2d 972, 974 (1993) (whether defendant would be entitled to invoke a sovereign immunity defense is a separate question). Racich did comment that only where a judgment against the employee could operate to control the actions of the State or subject it to liability does sovereign immunity encompass the employee's actions. Racich, 241 Ill.App.3d at 339, 181 Ill.Dec. 721, 608 N.E.2d at 974. Currie was applied in a case involving a school bus driver employed by the State, the court finding that the duty defendant allegedly breached is a duty that every school bus driver owes to his minor passengers, and the duty allegedly breached was not unique to defendant's state employment but was independent of that employment. Thomas v. Garner, 284 Ill. App.3d 90, 95, 219 Ill.Dec. 737, 672 N.E.2d 52, 55-56 (1996).
Do the provisions of the Act make much sense when applied to school teachers? Is a shop teacher's operation of a table saw without the guard really a "discretionary policy determination" (Arteman, 198 Ill.2d at 487, 261 Ill.Dec. 507, 763 N.E.2d at 764), or is it more like a state trooper's operation of his motor vehicle, an act which is not unique to his particular office (Currie, 148 Ill.2d at 167, 170 Ill.Dec. 297, 592 N.E.2d at 984)? The more recent cases seem to favor a finding of discretionary policy determination. A school district's decision not to provide roller-blade safety equipment is a discretionary policy determination. Arteman, 198 Ill.2d at 487, 261 Ill.Dec. 507, 763 N.E.2d at 764. A fire marshal's direction to an office worker to stand near a door during a fire drill involved a determination of policy and an exercise of discretion because in planning and conducting fire drills, the fire marshal had to balance various interests that might compete for the time and resources of the fire department, including the interests of efficiency and safety. Harinek v. 161 North Clark Street Ltd. Partnership, 181 Ill.2d 335, 342, 230 Ill.Dec. 11, 692 N.E.2d 1177, 1181-82 (1998). A principal who refuses a student's request to leave school early because of inclement weather is making a policy decision. Harrison v. Hardin County Community Unit School District *1026 No. 1, 197 Ill.2d 466, 474, 259 Ill.Dec. 440, 758 N.E.2d 848, 853 (2001). A tumbling coach in warning participants and providing safety equipment has to consider each tumbler's abilities, balance these interests against the resources available, and make a judgment as to how best to perform his coaching duties. This qualifies as the making of policy. Johnson v. Decatur Park District, 301 Ill.App.3d 798, 809, 235 Ill.Dec. 67, 704 N.E.2d 416, 424 (1998).
Were we correct when we said that "[n]ot every discretionary action taken by a public employee is immunized by section 2-201"? Courson, 301 Ill.App.3d at 757, 235 Ill.Dec. 98, 704 N.E.2d at 451; see Arteman, 198 Ill.2d at 493, 261 Ill.Dec. 507, 763 N.E.2d at 768 (Kilbride, J., dissenting) ("Any decision made by a municipal employee whose responsibilities include the determination of policy will be automatically immune from liability"). Does every employee of a school district make "discretionary policy determinations"? If a janitor scrubbing a floor trips a student with a mop, is the janitor's action immunized under section 2-201? Does not the janitor have to balance the various interests that might compete for his time and resources, and make a judgment as to whether to rope off the area or stop mopping as students are walking by? Discretionary acts are those which are unique to a particular public office. Arteman, 198 Ill.2d at 484-85, 261 Ill.Dec. 507, 763 N.E.2d at 763. It is hard to accept that, mopping a floor is a unique activity, but certainly the decision how to accomplish that task is generally left to the janitor.
Under the cases, it appears, based on Liddle's deposition, that the decision to remove the safety shield here was a decision unique to the particular public office. Apparently the "public office" here was that of shop teacher, like that of sports director or tumbling coach. The shop instructor was charged with balancing various interests that might compete for the time and resources of the shop class, including the interests of efficiency and safety. See Harinek, 181 Ill.2d at 342, 230 Ill.Dec. 11, 692 N.E.2d at 1182. A shop teacher in warning students and providing safety equipment has to consider each student's abilities, balance these interests against the resources available, and make a judgment how best to perform his teaching duties. See Johnson, 301 Ill.App.3d at 809, 235 Ill.Dec. 67, 704 N.E.2d at 424. Under the cases, we conclude that a discretionary policy determination was involved here and that the immunity of section 2-201 applies. Accordingly, we affirm the decision of the trial court.
It is troublesome that a shop class instructor can decide that a safety shield should be removed from a table saw being used by students, perhaps a shield whose use is required by the manufacturer for some operations. Could a driver training instructor determine that student drivers should not wear safety belts, that the students were safer without the belts? As unattractive as these conclusions are, section 2-201 would apparently provide immunity, just as "a school district would enjoy immunity if, for example, it provided its football players with leather helmets or, worse yet, no helmets at all." Arteman, 198 Ill.2d at 487, 261 Ill.Dec. 507, 763 N.E.2d at 764.
Plaintiff's complaint alleged that the District failed to properly maintain the saw. We questioned in our original decision whether section 3-102 of the Act (745 ILCS 10/3-102 (West 1994)), which provides in relevant part that "a local public entity has the duty to exercise ordinary care to maintain its property," was an exception to section 2-201. Courson, 301 Ill.App.3d at 758, 235 Ill.Dec. 98, 704 N.E.2d at 451. Section 2-201 applies only "[e]xcept as otherwise provided by [s]tatute." *1027 745 ILCS 10/2-201 (West 1994). Despite that language, the supreme court has held that whether a local public entity owed a duty of care and whether that entity enjoyed immunity are separate inquiries. Arteman, 198 Ill.2d at 480, 261 Ill.Dec. 507, 763 N.E.2d at 760, citing Barnett v. Zion Park District, 171 Ill.2d 378, 388, 216 Ill.Dec. 550, 665 N.E.2d 808, 813 (1996). Although there are a number of cases ("Gerrity and its progeny") holding "that school districts have a duty to provide safety equipment, and the School Code offers no immunity from allegations of negligent failure to provide such equipment," the supreme court has refused to extend those cases to prevent immunity under section 2-201. Arteman, 198 Ill.2d at 483, 261 Ill.Dec. 507, 763 N.E.2d at 762 (School Code and Tort Immunity Act are separate enactments). It may also be that the rule of "Gerrity and its progeny" is not a rule "otherwise provided by [s]tatute." (Emphasis added.) 745 ILCS 10/2-201 (West 2000); Arteman, 198 Ill.2d at 487, 261 Ill.Dec. 507, 763 N.E.2d at 764 (a judicially created exception cannot override a statutory immunity).
Section 3-102, however, is not a separate enactment, nor is it a judicially created exception. We conclude that section 3-102 imposes on a school district the duty to exercise reasonable care to maintain its property (see Adamczyk v. Township High School District 214, 324 Ill. App.3d 920, 922, 257 Ill.Dec. 928, 755 N.E.2d 30, 32 (2001)), and that such duty does not fall within the immunity of section 2-201. Nevertheless, we conclude that the action here, the intentional removal of a safety shield, cannot be characterized as a failure to maintain property.
Accordingly, we affirm the trial court's judgment.
Affirmed.
KNECHT, J., concurs.
MYERSCOUGH, J., dissents.
Justice MYERSCOUGH, dissenting:
I respectfully dissent. Based upon the record here, summary judgment was not appropriate. I cannot find as a matter of law that Liddle's actions were a discretionary policy determination subject to section 2-201 immunity. Liddle's actions here were discretionary, for Courson refers us to no statute, rule, regulation, or similar provision of law which would have compelled Liddle to take a different course of action on these facts. However, simply saying that Liddle's actions were discretionary does not end the matter. We noted in Courson that not every discretionary action taken by a public employee is immunized by section 2-201 of the Act. Only acts or omissions in determining policy are immunized. Courson, 301 Ill.App.3d at 757, 235 Ill.Dec. 98, 704 N.E.2d at 451.
When determining whether an employee's activity constitutes the determination of policy, both the position of the employee and the type of action must be considered. Harinek, 181 Ill.2d at 341, 230 Ill.Dec. 11, 692 N.E.2d at 1181. Thus, policy decisions are defined as:
"`[T]hose decisions which require the municipality to balance competing interests and to make a judgment call as to what solution will best serve each of those interests.'" Harinek, 181 Ill.2d at 342, 230 Ill.Dec. 11, 692 N.E.2d at 1181, quoting West v. Kirkham, 147 Ill.2d 1, 11, 167 Ill.Dec. 974, 588 N.E.2d 1104, 1109 (1992).
One of the purposes of tort immunity is to inhibit judicial second-guessing of the executive function. West, 147 Ill.2d at 12, 167 Ill.Dec. 974, 588 N.E.2d at 1109. Thus, where the decision-making process requires the special expertise of a governmental unit or involves the weighing of *1028 broad governmental objectives, immunity is more likely to be found available. See Harinek, 181 Ill.2d at 343, 230 Ill.Dec. 11, 692 N.E.2d at 1182 (City of Chicago fire marshal's decisions constituted policy); and West, 147 Ill.2d at 11, 167 Ill.Dec. 974, 588 N.E.2d at 1109 (municipal traffic planner's decisions constituted policy). On the other hand, where the activity in question does not constitute a "uniquely governmental function" courts have held immunity unavailable (see Courson, 301 Ill.App.3d at 757, 235 Ill.Dec. 98, 704 N.E.2d at 451); likewise, where objective standards for measuring conduct exist. Similarly, decisions regarding property maintenance might not be regarded as policy decisions. See Capps v. Belleville School District No. 201, 313 Ill.App.3d 710, 715, 246 Ill.Dec. 401, 730 N.E.2d 81, 86 (2000) (whether to put railing on an accessibility ramp, install lighting, and warn of a drop-off were maintenance decisions (in contrast to policy decisions)), overruled sub silentio by Harrison, 197 Ill.2d 466, 259 Ill.Dec. 440, 758 N.E.2d 848.
I conclude that immunity is not available in this case because Liddle was not determining policy in removing the safety guard from the wood saw. I recognize Liddle testified that he was given near-plenary authority over the operation of his shop class, and Courson has offered no evidence to refute this. I therefore accord that testimony its due weight. But, balanced against this is another factLiddle was a teacher. He did not occupy an executive or administrative position in the school district. His role was therefore less like that of the fire marshal in Harinek or the traffic planner in West.
Further, Liddle's specific action in removing the safety guard also is not a policy decision subject to immunity. That decision was not one requiring the unique expertise of some governmental unit. The use of power tools generally and wood saws specifically is a commonplace activity, for which objective standards of safety exist. Thus we need not be concerned that we are impinging upon the exclusive province of a coordinate branch of government, or that immunity is necessary to safeguard that branch's expertise. Again, this distinguishes Liddle's actions from those of the fire marshal in Harinek or the traffic planner in West. Moreover, the removal of a malfunctioning safety guard from such equipment is better characterized as a maintenance decision, not a policy planning one similar to that found in Capps. Therefore, I would reverse the trial court's order granting summary judgment in favor of the District.
I also disagree with the majority's holding and would find that the intentional removal of the safety shield constitutes a failure to maintain property and, therefore, respectfully dissent. Section 3-102(a) of the Act imposes on a school district the duty to exercise reasonable care to maintain its property. 745 ILCS 10/3-102(a) (West 2000). Liddle testified that the saw's safety shield was not functioning properly. Instead of having the saw repaired so that the safety shield functioned properly, Liddle simply removed the safety shield. He, therefore, breached his duty to exercise reasonable care to maintain the saw, and this breach of duty does not fall within the immunity of section 2-201. I would, therefore, reverse the trial court's order granting summary judgment in favor of the District.